IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PARK W. LENHART, III )
)
         Plaintiff, )
)
v. ) Civil Action No. 16-212
)
HUNTINGTON INSURANCE, INC., et al. )
)
         Defendants. )

# REPORT AND RECOMMENDATION

ROBERT C. MITCHELL, United States Magistrate Judge.

## I. RECOMMENDATION

Presently pending is Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated herein, it is respectfully recommended that the motion be granted.

## II. REPORT

### A. Factual Allegations and Procedural Background

Plaintiff Park W. Lenhart, III ("Plaintiff") initially filed a Complaint in the Court of Common Pleas of Allegheny County on January 28, 2016. On February 26, 2016 Defendants Huntington Insurance, Inc. and Huntington Bancshares Incorporated (collectively, "Huntington") removed the case to this Court.

We have jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.[1]

The allegations of the Complaint are as follows. At all times relevant to the events set

---

[1] The jurisdictional threshold amount of $75,000 is met by virtue of the WPCL's liquidated damages provision, 43 P.S. § 260.10 ("the employee shall be entitled to claim, in addition, as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater.")

forth in the Complaint Plaintiff was employed as a Managing Director of Huntington Insurance and a Senior Vice President of Huntington Bancshares in Pittsburgh, Pennsylvania. [ECF No. 1-2 at ¶ 4]. Huntington Bancshares owned, operated and controlled Huntington Insurance and provided insurance brokerage and service programs through Huntington Insurance [ECF No. 1-2 at ¶ 5]. Huntington Bancshares managed and controlled the Management Incentive Plan ('MIP") for employees of Huntington Insurance and Huntington Bancshares. [ECF No. 1-2 at ¶ 6]. The MIP is appended to Plaintiff's Complaint as Exhibit A [ECF No. 1-2 at pp.16-29] (hereinafter "MIP"). Plaintiff was a participant in the MIP, and was also provided other compensation. [ECF No. 1-2 at ¶ 7]. The MIP entitled him to earn annual bonuses, termed "Awards," according to Performance Criteria as defined yearly and "in accordance with the MIP." [ECF No. 1-2 at ¶ 8]. The "Plan Year" for purposes of the MIP is the calendar year. [ECF No. 1-2 at ¶ 9].

In the first two weeks of February 2015, Plaintiff had his yearly performance review for 2014 with his supervisor, Paul Baldwin. [ECF No. 1-2 at ¶ 10]. He was given a glowing review of his 2014 performance, was told that he had met and/or exceeded all performance criteria, and was informed that his Award for 2014 was $68,000. [ECF No. 1-2 at ¶ 11]. Awards were set to be paid on March 6, 2015, with the last possible date of payment being March 15, 2015 under the terms of the MIP. [ECF No. 1-2 at ¶¶ 12, 13]. Plaintiff's employment was unexpectedly terminated without cause on February 26, 2015, and he was never paid his Award of $68,000. [ECF No. 1-2 at ¶ 14, 15]. Plaintiff alleges Defendant terminated him in order to avoid paying him his Award. [ECF No. 1-2 at 26].

The payout provision of the MIP, found at Article VI "Payment of Awards", provides:

> 6.1 <u>Payment of Awards.</u> Unless payment is deferred, Awards will be payable in cash as soon as practicable following the close of the Plan Year. **No Award will be paid to a Participant who is not employed by the Corporation**

> **or a Subsidiary on the day the Award is paid** except (1) in the case of death, disability, or retirement of the Participant, (2) in the event that payment of the Award is deferred, or (3) in the event that a Change in Control of the Corporation has occurred. Notwithstanding any provision to the contrary, unless payment is deferred, in no event may Awards be paid later than the 15th day of the 3rd month after the end of the Plan Year in which the Award is earned. Awards are subject to federal, state and local income and other payroll tax withholding.

MIP at ¶ 6.1 (emphasis added). A later provision of the MIP, found at Article VIII "Miscellaneous Provisions" reads:

> 8.7 <u>No Employment Rights</u>. No Participant has any right to be retained in the employ of the Corporation or any Subsidiary by virtue of participation in the Plan.

MIP at ¶ 8.7.

The Complaint sets forth eight causes of action (four identical claims against each of the defendants): Count I and Count V allege that Huntington violated the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat. § 260.1 *et seq.* by withholding the 2014 Award; Count II and Count VI allege that Huntington breached its contract with Plaintiff; Count III and Count VII allege that Huntington created and breached an implied contract with Plaintiff; and Count IV and VIII allege that Huntington was unjustly enriched by Plaintiff's incentivized performance.

Defendants filed a Motion to Dismiss [ECF No. 7] on March 18, 2016, in which they ask the Court to dismiss the Complaint because Plaintiff has failed to state any plausible claim for relief. Plaintiff filed a four-page Memorandum of Law in Opposition on April 8, 2016 [ECF No. 14] to which Defendants have not replied. The matter is now ripe for disposition.

**B. Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P.

3

12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). A court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

In *Iqbal*, the Court laid out a two-part approach to reviewing a motion to dismiss under Rule 12(b)(6). First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. at 678. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive the motion; "instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'" *Id.; Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Twombly,* 550 U.S. at 563 n.8). Second, the court must determine whether the complaint "states a plausible claim for relief, . . . [which is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678. Only if "the '[f]actual allegations...raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc*., 926 F.2d 1406, 1409 (3d Cir. 1991)).

To determine the sufficiency of a complaint, the United States Court of Appeals for the

Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

As noted *supra*, Plaintiff has attached the MIP to his Complaint. Generally, a district court may not consider matters outside of the Complaint when ruling on a Rule 12(b)(6) motion to dismiss. "If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). An exception to this rule exists whereby courts may consider, for Rule 12(b)(6) purposes: (i) exhibits that are attached to the complaint, (ii) matters of public record, and (iii) any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993).

If a complaint is subject to Rule 12(b)(6) dismissal, the court must permit a curative amendment unless such an amendment would be inequitable or futile. *See Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004). We must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.*

With this standard of review in mind, we now turn to whether Plaintiff has stated a claim upon which relief can be granted.

C. Discussion

1. Counts I and V:  Wage Payment and Collection Law

Plaintiff alleges that he was entitled to relief under the WPCL, which provides employees a statutory remedy to recover wages and other benefits that are contractually due to them. Both the United States Court of Appeals for the Third Circuit and the Pennsylvania Supreme Court have observed that the WPCL's purpose is to provide for a *contractual* remedy. In ruling on the certification of a class, the United States Court of Appeals for the Third Circuit held that the WPCL "does not create a right to compensation" but instead "provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages."[2] *De Asencio v. Tyson Foods, Inc*., 342 F.3d 301, 309 (3d Cir. 2003) (citation omitted); *accord Weldon v. Kraft, Inc.,* 896 F.2d 793, 801 (3d Cir. 1990) ("[The] WPCL does not create a right to compensation. Rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages."). Similarly, the Pennsylvania Supreme Court has recognized in passing that "[t]he Wage Payment and Collection Law provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." *Obernerder v. Link Computer Corp.,* 696 A.2d 148, 150 (Pa.1997) (citing *Killian v. McCulloch*, 850 F. Supp. 1239, 1255 (E.D. Pa.1994)).

Thus, courts rely on contractual provisions to determine whether damages may be recovered.  *Weldon,* 896 F.2d at 801.

> A prerequisite for relief under the WPCL is a contract between employee and employer that sets forth their agreement on wages to be paid. . . .  While bonus payments are recoverable under the WPCL, 43 Pa. Stat. § 260.2a, it is the plaintiff's burden to prove that the bonus is "earned," i.e. "that the right to the wage or bonus vested under the terms of employment."

---

[2] "Wages" are defined under the WPCL to include "all earnings of an employe, regardless of whether determined on time, task, piece, commission or other method of calculation." 43 Pa. Stat. § 260.2a.  In his Complaint Plaintiff alleges that the MIP bonus Award at issue in this case constitute "wages" within the meaning of the WPCL, [ECF No. 1-2 at ¶ 18]  and Defendants do not appear to contest this assertion.

*Zandier v. Babcock & Wilcox Const. Co. Inc.*, No. 2:13-CV-459-JFC, 2015 WL 757480, at *9 (W.D. Pa. Feb. 23, 2015) (citations omitted); see also *Stebok v. American General Life and Acc. Ins. Co.,* 715 F. Supp. 711, 713 (W.D. Pa.1989), *aff'd,* 888 F.2d 1382 (3d Cir. 1989).

Plaintiff alleges the 2014 bonus Award was "earned" as follows: "Plaintiff was told that his bonus was Sixty-Eight Thousand ($68,000.00) Dollars in the beginning of 2015, *at which point, his 2014 bonus was deemed to have been earned.*" [ECF No. 1-2 at ¶ 22] (emphasis added). Defendants deny this, relying on the language of the relevant section of the payout provision under § 6.1 (requiring employment at time of payout), as well as the employment rights clause found at § 8.7 (no employment rights by virtue of participation in MIP), both quoted *supra.*

Defendants' cite two main cases in support of their Motion to Dismiss. The first is *Blackwell-Murray v. PNC Bank*, 963 F.Supp.2d 448 (E.D. Pa. 2013). In that case the United States District Court for the Eastern District of Pennsylvania held that "where a bonus or incentive requires that an employee be actually employed by the employer at the time the payment comes due, the employee has not earned that bonus or incentive." *Id.* at 470. Plaintiff, a former employee of PNC Bank, contended he was owed (1) incentive payments for the third quarter of the 2009 calendar year (July–September) and (2) an annual bonus payment for 2009, despite his admission he was terminated on September 21, 2009, prior to the time the quarter incentive would have been paid and prior to the time the yearly goal bonus was paid, i.e. the end of 2009. *Id.* at 473. In that case the court found that the restrictive terms of the agreement precluded plaintiff from receiving incentive pay or an annual bonus because his employment was terminated prior to the payout date. *Id.* at 473. Similar to the terms of the MIP at issue in the present case, the agreement in *Blackwell-Murray* provided that employees "must be employed"

7

by PNC Bank's retail division as of the payroll processing date in order to receive the award and further that "[e]mployees inactive as of the payroll processing date will not receive an incentive payment." *Id*. at 471. The WPCL claim was dismissed.

The *Blackwell-Murray* court noted:

> Bonus payments are recoverable under the WPCL. *See* 43 Pa. Stat. § 260.2a; *Cappuccio v. Pfizer, Inc.,* No. Civ.A.07–549, 2007 WL 2593704, at *5 (E.D. Pa. Aug. 31, 2007). The burden falls on Plaintiff, however, to prove that the bonus is "earned," *i.e.* that the right to the wage or bonus vested under the terms of employment. *Stebok v. Am. Gen. Life & Acc. Ins. Co.,* 715 F.Supp. 711, 713 (W.D.Pa.1989), *aff'd,* 888 F.2d 1382 (1989). Where a bonus or incentive requires that an employee be actually employed by the employer at the time the payment comes due, the employee has not earned that bonus or incentive. *See id.; Cappuccio,* 2007 WL 2593704, at *5.

*Blackwell-Murray,* 963 F. Supp.2d at 470.

Plaintiff argues that Defendants' reliance upon *Blackwell-Murray* and *Stebok*, discussed *infra*, is misplaced because those cases were decided on summary judgment and relied on extrinsic evidence and company policies which were very specific to each claim, and in neither case was the employee told he had earned a specific amount of compensation to be paid on a date certain. It is true that the court decided that summary judgement was warranted, rather than plaintiff had failed to state a cause of action. This does not change its holding that plaintiff had not met his burden of proof that he was entitled to the bonuses for purposes of his WPCL claim. The court relied on the clear and unambiguous term of the employment agreement

> Even assuming Plaintiff could prove that he met his incentive goals, **his WPCL claim cannot succeed because Plaintiff was not employed by Defendant at the time the claimed bonuses came due**. The contract in this case—the Third Year DeNovo for Growth Branch Mgmt. Incentive Plan—provides as follows:
>
> ***
>
> Employment status
>
> Employees must be employed by Retail Banking and have an "active" status on Compass (payroll system) as of the payroll processing date, generally the Thursday of the week prior to the incentive pay date, in order to receive an incentive award. . . .

> Employees inactive as of the payroll processing date will not receive an incentive payment.

*Id.* at 471 (emphasis added). The court explained that at his deposition plaintiff expressly testified that he was not employed at the time that the quarter incentive would have been paid.

> In light of this uncontradicted evidence that Plaintiff did not have "active" status on the payroll system at the time of the payroll processing dates for either of his claimed incentive payments, and given the explicit proscription on incentive payments to individuals no longer employed by PNC at the time the payments are processed, Plaintiff has failed to create an issue of fact as to his entitlement to these incentive payments. In sum, Plaintiff's WPCL claim must be dismissed.

*Id* at 472. Similarly, in the case at bar, there is no dispute that Plaintiff alleges he was not employed at the time that the bonus would have been paid, and by his own allegations the MIP required him to be employed in order to receive the bonus. [ECF No. 1-2 at ¶¶14, 23].

Defendants also rely on *Stebok v. American General Life and Accident Ins. Co.,* in which a former insurance agent brought a state court action against his employer to recover wages and benefits allegedly due after his employment was terminated. 715 F. Supp. 711 (W.D. Pa. 1989), *aff'd,* 888 F.2d 1382 (3d Cir. 1989). Under the terms of the agent compensation plan, the sales, collection and conservation of business in the sales geographic location creates certain calculations added to "pools." An agent's weekly compensation was calculated by a stated percentage from these "pools." This employment contract replaced an earlier one, and in effect, the plan required plaintiff to forfeit his commission in return for a regular weekly paycheck. Defendant moved for summary judgment on plaintiff's claim for the balance of the pools owed after his termination on February 9, 1987, contending that the provisions of the employment contract unambiguously state that plaintiff is not entitled to any commissions or amounts credited to pools which are unpaid at the time of termination of employment. Summary judgment was granted in favor of the defendant former employer.

The employment contract in *Stebok* had a similar provision to the case at bar. It provided:

> In the event of the field representative's termination of employment with the company of [sic] transfer to employment with the company in a capacity other than as a field representative, or the field representative's death, disability or retirement, the company will have no obligation to pay any compensation provided for in this agreement, or provided for in any compensation plan incorporated herein by reference, after the last week during which the field representative was employed under this agreement. None of the commissions or other compensation payments provided for in this agreement, or in any compensation plan incorporated herein by reference, will be vested.

*Id.* at 713. Like Plaintiff herein, Plaintiff argued that since the WPCL requires the payment of all "wages or compensation earned," he is entitled to the balance of the "pools" since he earned the commissions which make up the "pools." The Court held that the WPCL:

> creates a statutory remedy for an employer's breach of its contract duty to pay wages or commissions earned, but it is the employment contract which governs whether certain wages or commissions are "earned." *Sendi v. NCR Comten, Inc.,* 619 F.Supp. 1577, 1579 (E.D. Pa.1985), *aff'd. without opinion,* 800 F.2d 1138 (3d Cir.1986). The employment contract to which plaintiff and AGLA entered states that the commissions will not be vested. The contract also provides that employees forfeit all commissions not paid at time of termination. These two provisions clearly indicate that plaintiff never "earned" the commissions for the purpose of the WPCL, but "earned" only a weekly compensation, of which he was paid.

Stebok 715 F. Supp. at 713. The court held that "[s]ince the WPCL does not purport to outline what compensation is due in any particular case, a contractual restriction on when commissions are earned does not frustrate the statute's purpose." *Id.* at 714, quoting *Sendi*, 619 F. Supp. at 1580.

Based on the holdings and sound reasoning of this case law, it is respectfully recommended that the Motion to Dismiss Counts I and V be granted for failure to state a claim. The complaint alleges the validity and enforceability of the contract, rather than disputing it. The facts as alleged do not support a cause of action because there is no contractual obligation and no right to the bonus under the clear terms of the MIP. Section 6.1 clearly states that "[n]o Award

10

will be paid to a Participant who is not employed by the Corporation or a Subsidiary on the day the Award is paid." The bonus was not "earned" under the contract, and therefore, the WPCL claim must fail.

### 2. Counts II and VI: Breach of Contract

Plaintiff further alleges that Huntington breached its contract when it violated the terms of the MIP and declined to remit a 2014 Award to him. Under Pennsylvania common law, a cause of action for a breach of contract requires "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *CoreStates Bank v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999).

Huntington argues that the express language of Sections 6.1 and 8.7 of the MIP authorizes its decision and even so, the facts as alleged fail to plead a breach of contract. Plaintiff argues that the MIP must be read in its entirety, relying on Section 5.1, which states, "***Awards will be payable*** upon attainment of such goals and satisfactory evaluation of the Participant's business unit and individual performance." [ECF No. 1-2 at 23] (emphasis added). Nonetheless, as mentioned *supra,* Section 6.1, upon which Defendant relies, headed under Article VI "Payment of Awards" clearly and unequivocally provides that "No Award will be paid to a Participant who is not employed by the Corporation or a Subsidiary on the day the Award is paid" except for other inapplicable circumstances. [ECF No. 1-2 at 24]. Defendant argues that in the absence of plaintiff being employed on the date of payout, there is no express duty to pay the 2014 Award regardless of the Award's assessment period or the time or manner in which Plaintiff was informed of it.

When interpreting a contract, the Court first considers the intent of the parties as expressed by the words used in the contract. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 452 (3d

Cir. 2006). If those words used in the contract are unambiguous, then, as a matter of law, those words control. *Bohler–Uddeholm America, Inc. v. Ellwood Group, Inc.,* 247 F.3d 79, 92–93 (3d Cir. 2001). The court considers individual terms in the context of their entire contractual provision when determining the intent of the parties. *NorFab Corp. v. Travelers Indem. Co.*, 555 F.Supp.2d 505, 509 (E.D. Pa. 2008).

Plaintiff's interpretation of the contract provision – that his Award "will be payable" upon attainment of performance goals and a satisfactory evaluation - would essentially nullify the unambiguous provision in the contract setting out the payment of the awards pursuant to Article VI only to those employed on the day the Award would be paid. *County of Dauphin v. Fidelity and Deposit Co. of Md.*, 770 F.Supp. 248, 254 (M.D.Pa.1991) ("[P]roper contract interpretation requires the court to read the contract documents as an entirety and to avoid giving an interpretation to a provision that will nullify the clear and unambiguous language of another provision."). Moreover, the intent of the parties as written in the MIP makes it clear that Huntington was not required to maintain Plaintiff's employment by virtue of his participation in the MIP. MIP at § 8.7. Plaintiff himself has alleged that he needed to be employed on the date of the Award payout in order to be eligible to receive it [ECF No. 1-2 at ¶ 39], that the 2014 Award was due on March 6, 2015 [ECF No. 2-1 at 23] and that he was terminated on February 26, 2015 [ECF No. 1-2 at ¶ 14]. These allegations do not state a plausible claim for relief under a theory of breach of contract.

It is therefore respectfully recommended that Counts II and VI of the Complaint be dismissed because the MIP clearly provides that Huntington was not required to maintain Plaintiff's employment, and that he was not entitled to the 2014 Award. Plaintiff does not and cannot aver facts sufficient to render his claim for breach of contract against either Defendant as

facially plausible.

### 3. Counts III and VII: Breach of Implied Contract

Plaintiff avers that an implied contract existed that would continue his employment with Huntington until he was eligible to receive the 2014 Award. The essential elements of breach of implied contract are the same as an express contract, except the contract is implied through the parties' conduct, rather than expressly written. *Highland Sewer & Water Auth. v. Forest Hills Municipal Auth.*, 797 A.2d 385, 390 (Pa. Commw. 2002). "[T]he pleading of a written contract is only applicable to claims for breach of express contract" and there is no similar requirement for claims of implied contract. *Byrne v. Cleveland Clinic*, 684 F.Supp.2d 641, 658 (E.D. Pa. 2010). Although an exact offer and acceptance need not be identified, Plaintiff must show that through words or deed, both parties showed a mutual intention to contract. *Rissi v. Cappella*, 918 A.2d 131, 140 (Pa. Super. 2007).

Looking at the totality of the circumstances, plaintiff has not set forth facts in his complaint that could reasonably support the creation of an implied contract that would continue his employment with Huntington until he was eligible to receive the 2014 Award. We simply have his bare conclusion that the MIP entitled him to earn annual bonuses "in accordance with the MIP," he was told he would be paid the award, the award was not due to be paid until after he was terminated, and he was terminated without cause. Plaintiff does not factually allege that Huntington agreed through conduct, words or deed that it would maintain his employment between the time of his notification of the award and payment thereof.

Moreover, it is well-settled that where an express written agreement has been validly entered into by both parties, a party may not allege that an implied contract exists as to terms in

13

the written agreement. *Baer v. Chase,* 392 F.3d 609, 616–17 (3d Cir. 2004) (citing *Klebe v. United States,* 263 U.S. 188, 191–92, 44 S.Ct. 58, 68 L.Ed. 244 (1923)); *18 KT.TV, LLC v. Entest Biomedical, Inc.,* 2011 WL 5374515 *5 (M.D. Pa.2011) ("an implied contract cannot, by definition, exist within the same transaction as an express contract"). Specifically, a "claim of an implied-in-fact contract, in the face of an express agreement governing the same subject matter is legally untenable. There cannot be an implied-in-fact contract if there is an express contract that covers the same subject matter." *Baer,* 392 F.3d at 616–17. The theories of express contracts and implied-in-fact contracts are mutually exclusive. *Id.* at 617; *Brunwasser v. United States,* 2008 WL 5216253 at *5 (W.D. Pa .2008) (identical express and implied in fact contracts cannot coexist). "To be valid, an implied contract must be 'entirely unrelated to the express contract.' " *Grimm v. Discover Fin. Serv.,* 2008 WL 4821695 (W.D. Pa. 2008) (quoting *Klebe,* 263 U.S. at 191–92). Here, Section 8.7 of the MIP states: "No Employment Rights. No Participant has any right to be retained in the employ of the Corporation or any subsidiary by virtue of participation in the Plan." The express contract covers the same subject matter as the alleged implied contract.

It is therefore respectfully recommended that Counts III and Count VII be dismissed.

4. **Counts IV and VIII: Unjust Enrichment**

Plaintiff alleges that Huntington was unjustly enriched by his incentivized, but uncompensated, work productivity. Unjust enrichment is essentially an equitable doctrine. *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super.1993). In Pennsylvania, a party seeking to plead unjust enrichment must allege the following elements: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) the defendant's acceptance and retention of the benefit 'under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" *Giordano v. Glaudio*, 714 F.Supp.2d 508, 530

14

(E.D. Pa. 2010) (quoting *Filippi v. City of Erie,* 968 A.2d 239, 242 (Pa.Commw.Ct.2009)). Under these circumstances, "the law implies a contract between the parties pursuant to which the plaintiff must be compensated for the benefits unjustly received by the defendant." *Styer*, 619 A.2d at 350. The existence of such a contract "requires that the defendant pay the plaintiff the value of the benefits conferred. . . ." *Id.*

Yet the doctrine does not apply where a written or express contract exists. *Lackner v. Glosser,* 892 A.2d 21, 34 (Pa. Super. 2006) (citing *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999). This "bright-line rule" is consistently recognized by Pennsylvania courts. *Wilson Area School Dist. v. Skepton,* 895 A.2d 1250, 1254 (Pa. 2006). As the Court in *Wilson* explained,

> [T]his bright-line rule also has deep roots in the classical liberal theory of contract. It embodies the principle that parties in contractual privity ... are not entitled to the remedies available under a judicially-imposed quasi-contract [i.e. the parties are not entitled to restitution based on unjust enrichment] because the terms of their agreement (express or implied) define their respective rights, duties, and expectations.

*Id.* We note that plaintiff has not pled that the contract governing the issues in this case is invalid or otherwise unenforceable, nor does he plead this theory in the alternative. Thus his request for relief based on a theory of unjust enrichment is inappropriate under Pennsylvania law. *Moore v. Anglies List, Inc.*, 118 F.Supp.3d 803 (E.D. Pa. 2015).

It is therefore respectfully recommended that Counts IV and VIII be dismiss for failure to state a claim as there are no facts alleged to support the cause of action in light of the valid contract between the parties.

Finally, we note that plaintiff has not sought leave to amend his Complaint, and regardless, leave would be futile as the complaint, even if amended would fail to state a claim upon which relief could be granted. *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004).

15

## III. CONCLUSION

For the forgoing reasons, it is respectfully recommended that Defendant's Motion to dismiss [ECF No. 7] be granted and the case be dismissed in its entirety with prejudice.

In accordance with Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules pertaining to Magistrate Judges, the parties are granted fourteen days to file written objections to this Report and Recommendation. Failure to do so may waive the right to appeal. Any party opposing written objections shall have fourteen days after the service of such objections to respond thereto.

Dated: June 8, 2016

Respectfully submitted,

/s/ *Robert C. Mitchell*
ROBERT C. MITCHELL
United States Magistrate Judge

Cc: Hon. Joy Flowers Conti
Record counsel